## REMBUSCH v. BENNETHUM et al.

(District Court, E. D. Pennsylvania. May 19, 1914.)

### No. 667, April Session, 1911.

PATENTS (§ 328*)—VALIDITY AND INFRINGEMENT—SCREEN FOR SHOWING MOVING PICTURES.

The Rembusch patent, No. 937,550, for a screen for use in exhibiting moving pictures and stereopticon views, and consisting of a sheet of plate glass having its back silvered and its front, whereon the picture is thrown by a lantern, ground, was not anticipated by the use in the sign art of mirrors having letters or designs etched or ground on their front, nor is it invalid because of the English patent to Zechmann for a similar article; the evidence showing that Rembusch's invention was perfected prior to the issuance of the English patent or the filing of the specification describing the same. Also *held* infringed.

In Equity. Suit by Frank J. Rembusch against George Bennethum, Sylvester Weis, and George Weis. On final hearing. Decree for complainant.

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date. & Rep'r Indexes
214 F.—17

Wm. Steell Jackson, of Philadelphia, Pa., and Arthur M. Hood, of Indianapolis, Ind., for plaintiff.

J. Milton Miller, of Reading, Pa., and Charles N. Butler, of Philadelphia, Pa., for defendants.

BUFFINGTON, Circuit Judge. In this case Frank J. Rembusch, the grantee of patent No. 937,550, issued to him on October 19, 1909, for a screen, charged George Bennethum and others with infringement thereof. The object of the invention is, as recited in the specification, to "provide a screen which offers a total obstruction to the passage of light through it, and in this manner improves the distinctness, clearness, and brilliancy of images thrown upon the screen." The specification also says the screen is "of special service in connection with apparatus for exhibiting moving pictures and stereopticon views." As thus applied, Rembusch's screen consists of a sheet of plate glass having its back silvered and its front, whereon the picture is thrown by a lantern, ground. The proofs, as well as the demonstration made at bar, show that images are produced on this screen with greater clearness and distinctness than on a sheet. The screen has proved a commercial success, and, for the short time it has been on the market, sales thereof have been large. There is no doubt of either its novelty or utility, but the validity of the patent is challenged on the ground of lack of invention.

In the prior art it was common to cut or make letters, ornamental designs, or borders on the ground side of a plate of glass and silver its rear side. Such a sign, exhibited at the Philadelphia Centennial of 1876, was shown in court. Indeed, the patentee, who was in the mirror business, frankly says:

"I have manufactured these ornamental mirrors. * * * I mean to say the letters and figures were chipped or ground in, and it was this grinding or chipping that made the letters visible, on account of the depression made in the surface of the glass. * * * Probably since 1894, and in 1899 and 1900, I manufactured a great many glass signs and used the sand blast, chipping, etching, and all these other various processes extensively."

Such being the prior art, the case narrows itself to the question whether it involved invention to produce Rembusch's screen. Now, while grinding one surface of a plate and silvering the other were, as mechanical steps in the process of sign making, known, that fact never suggested to any one the use of such a plate for any other purpose. A ground and silvered plate was only a preparatory step toward making signs, and in taking that step letters or ornaments were chipped or ground in the front face. When the article was finished—and the real nature of a prior use must be judged by the use to which the finished article was put—we find, not a plate with an unbroken ground front and an invisible mirror behind, but one with a broken ground front, and so broken in order to make visible the mirror behind it. The purpose in view was to allow the mirror by reflection to clearly delimit, define, and illuminate the intaglio letters or designs cut in the ground front. The ground surface surrounding these letters simply served to define the letters or designs, and by the dullness of its surface intensify the reflection from the mirror through the letters or designs. In other

words, the front of the plate was only ground solid initially for the purpose of thereafter changing it. This change, however, would render it wholly unfit for use in the moving picture art, where the light of the lantern would be reflected through the letters or designs on the broken ground face of the plate.

During all the following years, although the use of sheets or screens for reproducing lantern slides was common, no one thought of putting a mirror back of ground glass to make a lantern screen. As a substitute for old-fashioned blackboards we find plates of glass with ground-glass fronts and backs painted black, to make chalk marks more distinct. But even this led no one to make a ground-faced, submirrored screen. To us it is clear that the genesis of such a screen was creation rather than progression—origin, not improvement. It was a veritable finding of something new, something that did not exist before. It coupled a ground-glass front and a mirrored back in a novel co-operating use. The ground front made a screen for a lantern, a use to which ground glass had never been put. Its unbroken surface was now for the first time used to completely prevent a mirror from reflecting light thrown upon it. So, also, the mirror was given a new use, in that its reflective powers were now used to intensify and increase the outline and detail of figures now for the first time thrown on an unbroken ground front. Theretofore a mirror had been used visibly for reflection; Rembusch showed its concealed, invisible use for reflection. Until Rembusch disclosed the use of a ground front mirror as a screen, the grinding of the whole front of a mirror would have unfitted it for any use then known. The proofs show that the invention was the result of study, experiment, and time. We are clear the device embodies invention in the true sense. Its use by the defendant Bennethum is established, and, as plaintiffs disclaim any purpose to hold the other defendants for damages, the question of joint tort-feasors becomes academic.

It, however, appears that the same discovery made by Rembusch in this country was made abroad by one Zechmann, to whom British patent No. 17,285 of 1908 was granted. It is conceded that such patent "discloses the invention of the patent in suit, and, if it were a pertinent reference, it would be anticipatory." Zechmann's complete specification was accepted February 25, 1909; his complete specifications and drawings were first printed and placed on sale March 18, 1909; and his patent granted July 6, 1909. Rembusch having, as we have seen, made a new and useful invention, not theretofore known or used by others in this country, he was, by R. S. § 4886 (U. S. Comp. St. 1901, p. 3382), entitled to a patent if his invention was "not patented or described in any printed publication in this or any foreign country, before his invention or discovery thereof," or "more than two years prior to his application."

Without entering into a discussion of Zechmann's effective dates, and taking for comparison the earliest day connected with any discovery on his part, viz., February 25, 1909, we may say that the evidence satisfies us, and we so find as a fact, that prior thereto Rembusch had made the discovery or invention embodied in his patent. He states

that, through some experiments he was making in using a magic lantern and attempting to reflect light rays, he, in the fall of 1907, used a mirror on account of its reflecting powers, and that he was then led to grind its face. In doing so he found that the reflected light was enhanced thereby, and he then saw the possibility of using such a screen in stereopticons and moving pictures. He was at that time engaged in the manufacture of mirrors, and he experimented in various ways, covering the mirror face with shellac, paint, and silk. During 1908 he ground different plates with various grades of emery, carborundum, and sand, and tested the results with a magic lantern in the laboratory, in his factory, and at his home. His wife corroborates his testimony. She states he talked to her in the fall of 1907 about his experiments, and she later saw him use the magic lantern at the factory and their home. She says that in the spring of 1908, a date she fixes by a church dedication in August following, her husband described to her the idea of a reflecting screen, consisting of ground glass with a mirror back. Porter, a partner of Rembusch, says that in December, 1908, Rembusch told him of his idea of getting up a screen for moving pictures, and he then showed him a piece of glass sand-blasted on one side and silvered on the other. He states that in January or February, 1909, Rembusch used this piece of glass with a magic lantern. These experiments were followed by the making by Rembusch & Porter's firm of such a screen on a large scale in May, and its installation in a moving picture theater in June, 1909. There is other and corroborating proof to which we need not refer. It thus appears that Rembusch's invention was complete in December, 1908, and was then embodied in workable form. We simply refer to the subsequent and prompt utilization of the invention in a commercial screen to corroborate and sustain the fact of the completeness of the invention at the earlier date.

In accordance with these views, we find the patent valid and infringed. A proper decree may be drawn and submitted.